UNITED STATES (BECKLEY v.). See Case No. 1,211.

## Case No. 14,556.

### UNITED STATES v. BEDDO et al.

[4 Cranch. C. C. 664.] [1]

Circuit Court, District of Columbia. Nov. Term, 1835.

WITNESS—NEGROES—MULATTOES—OF WHAT RACE —MOTHER.

Free negroes and mulattoes, not born of white women, are not competent witnesses against free negroes and mulattoes not in a state of servitude by law.

The defendants were convicted of a cheat, by passing and imposing a paper having the appearance of a bank-note, upon a free negro, born of a free colored mother. The only witnesses for the prosecution were free negroes and mulattoes, born of free colored mothers. The defendants were free mulattoes.

After the trial, it was discovered by Mr. Bradley, the defendants' counsel, that Beddo, one of the defendants, was a mulatto, born of a white woman, and not in a state of servitude, by law; and he now moved for a new trial, on the ground that a free negro or mulatto, born of a free colored woman, is not a competent witness against a free negro or mulatto, born of a white woman, and not in a state of servitude by law. He contended, that, upon the principle, "partus sequitur ventrem," a mulatto, born of a white woman, is, in law, a white person, and, if not in a state of servitude by law, is entitled to all the privileges of a white person.

The Maryland act of 1717 (chapter 13) entitled "A supplementary act to the act relating to servants and slaves," (Act 1715, c. 44,) recites, that "Whereas it may be of very dangerous consequence to admit and allow, as evidences in law, in any of the courts of record, or before any magistrate, within this province, any negro or mulatto slave, or free negro, or mulatto, born of a white woman, during their servitude, appointed by law, or any Indian slave, or free Indian, natives of this or the neighboring provinces. II. Be it therefore enacted," &c., "that from and after the end of this present session of assembly, no negro or mulatto slave, free negro or mulatto,

[1] [Reported by Hon. William Cranch, Chief Judge.]

born of a white woman, during his time of servitude by law; or any Indian slave or free Indian, natives of this or the neighboring provinces, be admitted and received as good and valid evidence, in law, in any matter or thing whatsoever, depending before any court of record, or before any magistrate within this province, wherein any Christian white person is concerned. III. Yet, nevertheless when other sufficient evidence is wanting against any negro or mulatto slaves, free negro, or mulatto, born of a white woman, during their servitude by law; or against any Indian, native of this or the neighboring provinces; in such case, the testimony of any negro or mulatto slave, free negro, or mulatto, born of a white woman, or Indian, native of this or the neighboring provinces, may be heard and received, as evidence, according to the discretion of the several courts of record, or magistrate, before whom such matter or thing against such negro, mulatto slave," &c., "shall depend; provided, such evidence or testimony do not extend to the depriving them, or any of them, of life or member."

It was contended, by the defendants' counsel, that, as the third section of this act expressly authorizes the courts to receive the testimony of any slave, free negro, mulatto born of a white woman, against any slave, free negro, or mulatto born of a white woman, during their servitude by law, an inference arises, that a free negro, or mulatto born of a white woman, cannot be received as a witness against a free negro, or mulatto born of a white woman, not in a state of servitude by law; so that, in no case, can the testimony of a colored person be received against another colored person who is not a slave, or in a state of servitude by law.

On the other side, it was argued by Mr. Key, for the United States, that, from the 2d section of the act, as strong, if not a stronger and clearer inference may be drawn, that negroes and mulattoes, not in a state of slavery or servitude by law, are competent witnesses in all cases.

The second section is prohibitory; the third is presumptive. The second prohibits the receiving as witnesses only slaves, or persons in a state of servitude by law, and Indians; and even then only in a matter wherein any Christian white person is concerned. It contains no prohibition to receive free negroes and mulattoes who are not in a state of legal servitude, even in the case where a Christian white person is concerned; nor to receive the testimony of slaves and free negroes and mulattoes in a state of legal servitude, and Indians, in cases where no Christian white person is concerned. But as all public prosecutions,

in the year 1737, when that act was passed, were in the name of the lord proprietary. they were cases wherein a Christian white person was concerned, and no slave or colored person, in a state of servitude by law. could be received as a witness therein. For this reason the third section commences with the words, "Yet, nevertheless;" as if to say, that although, by the second section, slaves, and persons in a state of legal servitude, were generally to be excluded in cases wherein a Christian white person is concerned, yet, in prosecutions in the name of the lord proprietary against slaves and persons in a state of servitude by law, the courts may, in their discretion, receive the testimony of slaves, and persons in a state of servitude by law provided such testimony do not extend to the depriving them of life or member. The third section contains only an exception to the generality of the second; and the two sections construed together, (as they ought to be,) amount to this; that the testimony of slaves and persons in a state of legal servitude, shall not be received in any matter wherein any Christian white person shall be concerned except in public prosecutions against slaves or persons in a state of servitude by law. The inference (arising from the admission of slaves, free negroes, and mulattoes, in a state of servitude by law, as witnesses only against slaves, free negroes, and mulattoes, in a state of servitude by law) that free negroes and mulattoes not in a state of servitude by law, are excluded in all other cases, is rebutted by the inference (arising from their exclusion, in the second section, only in matters wherein any Christian white person is concerned) that they are admissible in all other cases. This inference is strengthened by the preamble, which only complains of the admitting "as evidences in law, in any of the courts of record, or before any magistrate, within this province, any negro or mulatto slave, free negro or mulatto born of a white woman during their servitude appointed by law, or any Indian slave or free Indian;" thus showing, that the incompetency resulted from the condition of slavery or servitude, and not from color.

THE COURT (CRANCH, Chief Judge, dissenting,) granted a new trial as to both defendants, upon the ground, as it was understood, that free negroes and mulattoes, not born of white women, were not competent witnesses against free negroes and mulattoes not in a state of servitude by law.

After the granting of the new trial, the attorney for the United States, finding that there were no witnesses for the prosecution other than free negroes and mulattoes born of colored women, ordered a nolle prosequi to be entered with the leave of the court.